# EXHIBIT 1

ØŠÒÖ
GÐÐÍÁ͑ŒÝÁÏÆÚÏ͑Þ͒
S͑ÕÁÖÜW͟͞VÝ
ÙÜÚÖÚÚÙÁÖÜWÜVÁÖŠÒÜS
ÒŠÒÖ
Ô͑ÜͶÁ͑Ͷ͠͠ÆͶ͑͠͠ÆÚͶ͑

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| **JULIE POSTMA** and **KATHLEEN DEMARIA**, a married couple, | NO. |
| Plaintiffs, | |
| vs. | **COMPLAINT FOR BREACH OF LEASE** |
| **CAROLYNN L. COMSTOCK** and **JIM OWEN**, a married couple, | |
| Defendants. | |

COME NOW, Julie Postma and Kathleen DeMaria, ("Plaintiffs") for cause of relief, allege and complain as follows:

## I.  PARTIES

1.1    Julie Postma and Kathleen Demaria were married at all times relevant to this Complaint and reside in California.

1.2    Defendants, Carolynn L. Comstock and Jim Owen were married at all times relevant to this Complaint and reside in King County, Washington.  All actions by Carolynn L. Comstock were taken on her own behalf and on the behalf of her marital community.

## II.  VENUE/JURISDICTION

2.1    The lease at issue was executed in King County by Carolynn L. Comstock.

2.2    The property to which the lease pertained to is in King County, Washington.

COMPLAINT – PAGE 1 OF 3

2.3    The damage to the property to which this claim pertains occurred in King County, Washington.

2.4    The amount at issue exceeds the jurisdictional minimums for superior court.

### III.    FACTS

3.1    Plaintiffs own real property commonly known as 14327 26th Ave. NE, Seattle, Washington 98125 ("the Property").

3.2    Defendants leased the Property by way of a lease, attached as **Exhibit 1**, ("the Lease").

3.3    Defendants were evicted from the Property under King County Superior Court Cause #25-2-02627-7, wherein a judgment was entered on February 18, 2025 for: (a) a writ of restitution; (b) judgment for rents in the amount of $4,791.84; (c) attorney fees in the amount of $1,515.00; and (d) costs in the amount of $506.47.

3.4    Upon regaining possession of the Property, Plaintiffs discovered extensive damage to the Property.

3.5    Plaintiffs have not been paid all rent that is due in excess of the amounts of rent that were previously reduced to a judgment, as set forth in Section 3.3 above.

3.6    The Lease has a mandatory attorney fees and costs clause for the prevailing party.

3.7    Plaintiffs have incurred legal fees and costs in excess of what has been previously awarded.

3.8    Plaintiffs have been injured in the amounts set forth in **Exhibit 2**[1] and adjusted as follows:

| | |
|---|---|
| Total on Exhibit 2 | $ 46,274.02 |
| Less prior judgment | ($ 6,813.31) |

---

[1] It is noted in Exhibit 2 where each itemized damage is called for in the lease.

COMPLAINT – PAGE 2 OF 3

BURNS LAW, PLLC
3711 Center Street
Tacoma, Washington 98409
Telephone: (253) 507-5586

|  | Reduction of Late Fees per RCW 59.18.410[2] | (\$ 2,395.00) |
|--|--|--|
|  | Total owed | \$ 37,065.71 |

3.9    Additional attorney fees and costs are accruing in this action and should be awarded in addition to the amounts set forth above.

## IV.    FIRST CAUSE OF ACTION: BREACH OF LEASE

Defendant Carolynn L. Comstock signed the Lease and Defendants have failed to perform their responsibilities under the Lease, causing Plaintiffs damage in the amount of \$37,065.71, plus further accruing prejudgment interest and attorney fees and costs.

## V. SECOND CAUSE OF ACTION:  PROPERTY DAMAGE

Defendant Carolynn L. Comstock and/or her sublessee, family or guests caused damages to the real property at issue I an amount of \$37,065.71 plus pre-judgment interest, attorney fees and costs.

## VI.  PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants jointly and severally in the principal amount of \$37,065.71, plus further prejudgment interest at 12%, including attorney fees and costs.

DATED this 27 day of May, 2025.

BURNS LAW, PLLC

By: _____
    Martin Burns, WSBA No. 23412
    Attorney for Plaintiffs

\\Law2016\law\Clients\32000\32510 DeMaria, Kathleen\Pleadings\Drafts\Complaint.doc

---

[2] Said statute caps late fees at \$75.  Exhibit 2 has \$2,470 of contract late fees.  Thus, Exhibit 2 is reduced \$2,395.

COMPLAINT – PAGE 3 OF 3

BURNS LAW, PLLC
3711 Center Street
Tacoma, Washington  98409
Telephone: (253) 507-5586

EXHIBIT 1

**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 1.         -Seattle Single Family-

## 1.1  LEASE/RENTAL AGREEMENT & SECURITY DEPOSIT RECIEPT

THIS AGREEMENT made this 8thday of February , 2023 <u>XX</u> Owner   ☐  Agent Julie Postma and Kathleen DeMaria (who shall be the Landlord as defined in law, hereinafter called "Owner") and  Carolynn L. Comstock (regardless of number, who shall be the Tenant as defined in law, hereinafter called "Resident"), for rental Premises located at
14327 26th Ave NE
Seattle, WA 98125
in the City of Seattle, County of King, State of Washington (hereinafter called the "Premises.") The Premises may be a portion of a larger parcel of land and, if so, the larger parcel shall be referred to herein as the Property.

X_____*CC*_____
Carolynn L. Comstock

## 1.2  TERMS

1.  **TERM**: The term of this Agreement shall be (check one):
A)  ☐  a month-to-month tenancy beginning  02/18/2023 ; OR
B) **X** Lease for a term of months  18 months  beginning  02/18/2023  and ending  08/31/2024 .

If a Lease for a term greater than one year, have all signatures notarized and attach a legal description of the Property.

**If Section  1.B is checked above, check one of the following:**

C.  ☐  Upon expiration of the above-stated term described in Section 1.B, this Agreement shall revert to a month-to-month tenancy on the same terms and conditions as this Agreement except as may be amended by Owner upon 30 days' written notice, except for rent increases which require 60 days' notice OR
D.   **X**  Upon expiration of the above-stated term described in  Section  1.B all Resident's rights to occupy the Premises shall cease without right to extend the term hereof. This Agreement shall not revert to a month-to-month tenancy following expiration of the term.

## 1.3  RENT

Resident shall pay monthly rent and other charges in the following amounts:

| | |
|---|---|
| Liability to Landlord Insurance | $9.50 |
| Rent Income | $2,950.00 |
| **Total:** | **$2,959.50** |

The total amount of monthly rent due, which includes the monthly Premises rent, monthly parking space rent, monthly storage rent, and any other monthly, recurring charges, is considered "Rent" and is payable in advance by the <u>1st day</u> of each and every month (hereinafter called the "Rent Due Date") during said term to Owner <u>via Online Tenant Portal</u> or any such other place the Owner may from time to time designate.

Any rent unpaid by the due date is termed delinquent. Owner shall apply funds received from Resident first to the current month's unpaid rent(which includes unpaid utilities), past due rent (which includes unpaid utilities), late payment charges, notice fees, and then to any other remaining balances due in the following order: damage, repairs, and miscellaneous charges. At any time during month to month tenancy, rent may be increased on 60 days' written notice.

**Rent received more than (5) days after the Rent Due Date shall result in assessment against Resident of a $50 late payment charge plus $10 each additional day thereafter that rent has not been paid in full.**

Any check which fails to clear the bank shall be treated as unpaid rent and shall be subject to the aforementioned late payment charge, plus a $30 returned check fee. Should Resident submit a check that is dishonored or returned for non-sufficient funds, or should Resident offer payment to cure any default such as following receipt of a Notice to Pay Rent or Vacate, Resident shall make such payment by cash, cashiers check or money order. If Resident gives Owner a check that is returned for non-payment all future payments by Resident shall be made by cash, cashiers check or money order. Notwhithstanding the foregoing. Owner may issue a Notice to Pay Rent or Vacate immediately after the rental due date without waiting until late payment charges begin to accrue.

If for reason of non-payment of rent Owner shall give a statutory Notice to Pay Rent or Vacate, or if Owner shall lawfully issue any other notice permitted pursuant to RCW 59.12 et seq. or RCW 59.18 et seq., Resident agrees to pay in addition to the delinquent rent and late payment charges provided for above, the sum of $100 for preparing and giving the notice.

## 1.4 DEPOSIT:

Resident shall pay a Security Deposit in the total amount of $2800.00 which ☑ has been paid in full ☐ will be paid in accord with the Deposit Payment Schedule. In accordance with SMC 7.24.035 (A,B) the combined total of security deposit and non-refundable screening and/or move-in cleaning fees may not exceed the amount of the total first months rent. The deposit is for all purposes, including unpaid rent, damage, cleaning, late payment, utilities, keys and other charges. The deposit shall be kept in a separate account with a financial institution (bank or credit union), whose name and address is Seattle Bank, 600 University St Ste 1850 Seattle, WA 98101. Resident's liability is not limited by the amount of the deposit. Resident is prohibited from applying any amount of the deposit to rental or other payments owed to Owner. Any refund will be by a single check payable to all individual Residents and they shall apportion any refund among themselves. Owner's itemized statement for retaining any of the deposit, together with any refund owing shall be sent to Resident's forwarding address in accordance with State law RCW 59.18.280 after termination of this Agreement and vacation of the Premises, conditioned upon the following:

**A.** Resident shall have complied with all the conditions of this Agreement.

B. Except for charges imposed pursuant to paragraph Section 4, Resident shall clean and restore the Premises to its condition at the commencement of this tenancy as evidenced by the Property Condition Checklist, which is incorporated herein by reference less wear and tear from normal usage. Resident agrees that soiling or staining is not wear and tear from normal usage.

**C.** Resident shall surrender all keys and remote control devices to Owner.
**D.** Resident shall bear the cost to replace or repair any missing or damaged property or fixtures provided by the Owner.
**E.** Labor and administrative costs for cleaning and repairing the Premises shall be at the rate of $75 per hour, excepting labor performed by parties other than Owner or agent, which shall be assessed at its actual cost.
**F.** Resident's payment of any fees or charges imposed pursuant to this Agreement, including early termination charges.

G. If Owner charges non-refundable cleaning fee at commencement of tenancy no further administrative fee will be assessed for cleaning at move-out.

## 1.5 NON-REFUNDABLE AND/OR PROCESSING FEES:

Resident shall pay the sum of $ (insert zero if this paragraph is inapplicable) which ☐ has been paid in full ☐ will be paid in accord with the Deposit Payment Schedule as a non-refundable charge which shall be used for (identify what the fee covers – be specific) , which sum shall not be refunded under any circumstances. In accordance with SMC 7.24.035 (A,B), the combined total of security deposit and

non-refundable screening and/or move-in cleaning fees may not exceed the amount of the total first month's rent. Other than charging non-refundable screening and cleaning fees, security deposits and last month's rent, landlords are prohibited from charging Residents any one-time fee at the beginning of tenancy. Total non-refundable fees(screening and cleaning fees, only) cannot exceed 10% of the first full month's rent.

## 1.6 PREPAYMENTS:

Resident shall make a prepayment towards Last Month's Rent of $2950.00 which ☑ has been paid in full ☐ will be paid in accord with the Deposit Payment Schedule. Resident is required to pay any difference between the total prepayment and the actual last month's rent where the rent has increased before the last month of tenancy.

## 1.7 SCREENING FEES:

Screening fees paid prior to commencement of tenancy in the amount of $55.00 are non-refundable. In accordance with SMC 7.24.035 (A,B) the combined total of security deposit and non-refundable screening and/or move-in cleaning fees may not exceed the amount of the total first month's rent. Other than charging non-refundable screening and cleaning fees, security deposits, and last months rent landlords are prohibited from charging Residents any one-time fee at the beginning of tenancy. Total non-refundable fees(screening and cleaning fees, only) cannot exceed 10% of may be included in the non-refundable fee but may not exceed the first full month's rent. The amount in excess of 10% may be included in non-refundable fee but may not exceed the customary costs charged by a screening service in The City of Seattle. Resident authorizes Owner to obtain supplementary credit reports at any time during the Resident's occupancy of the Premises at Owner's expense. Resident warrants the accuracy of all information contained on Resident's rental application. A subsequent determination that Resident provided false or inaccurate information on the rental application is a breach of the terms of this Agreement and Owner may take legal action to terminate this Agreement in such case.

By initialing below, you acknowledge and agree to the terms in Section 1.

X 

Carolynn L. Comstock

# 2. General Clauses

## 2.1 TERMINATION OF TENANCY

Resident understands that this tenancy shall terminate at 11:00 AM on the last day of occupancy. It is Resident's obligation to have the Premises vacant and thoroughly clean by that hour. At any time where the tenancy is one from month-to-month, notice of termination by Resident shall be by written notice of at least twenty (20) days before the end of any monthly rental period. Any notice of termination given by Owner must comply with notice periods and other requirements specified under RCW 59.18.200 and SMC 22.206.160 (C). Any notice of termination must provide for the vacation of the Premises by all occupants unless otherwise agreed to by Owner in writing. If Resident vacates the Premises prior to the expiration hereof or without notice as required by this paragraph, Resident shall be liable for additional rent as provided for in RCW59.18.310. without notice or mutually signed written Early Termination Agreement of the Owner. Any items left behind in the unit by the Resident after termination of tenancy will be handled as required under RCW 59.18.310.

## 2.2 DAMAGE

Resident has inspected the Premises and acknowledges that they are in good condition at the commencement of this Agreement, except as otherwise indicated on the Property Condition Report (attach form as required by RCW 59.18.260). Resident shall keep the Premises in a clean and orderly condition, including but not limited to appliances, plumbing, floor coverings, and all personal property provided by Owner, throughout the term of this Agreement and upon surrendering the Premises to Owner. Resident will bear the cost of any cleaning

or repair performed by Owner to restore the Premises to the condition indicated on the attached Property Condition Checklist, except for wear resulting from ordinary use of the Premises. Resident is responsible for rent lost by Owner while performing repairs and / or cleaning because of failure to comply with the foregoing. The Property Condition Checklist will be used to determine the refund of security and pet deposits at the end of the tenancy.

## 2.3 AFTER-HOURS LOCKOUT CLAUSE

In the event that Resident(s) request the Owner to unlock any exterior or interior door for any reason Resident is required to <u>call a locksmith at their own expense.</u>

## 2.4 SMOKE DETECTION DEVICES / FIRE SAFETY AND PROTECTION INFORMATION:

Number of detection devices provided in Premises  as required by law (several may be required): 5
Smoke detection device(s) are – check all that apply:

- ☐ Hard-wired
- ☑ Battery Operated

It is the responsibility of Resident to maintain all smoke detection devices, including replacement of any batteries. Resident shall not tamper with, remove batteries, or otherwise disable any smoke detection devices. Any Resident failing to comply with the provisions of this paragraph can be fined up to $200 in accordance with RCW 43.44.110 / WAC 212.10.050. Resident's initials at the end of this paragraph indicate that
all smoke detection devices in the Premises are in proper working order as of the date of this Agreement. If battery operated, or unit uses battery backup, resident(s) is responsible for replacing batteries as needed. Resident agrees to test the smoke detector for proper operation once a month and report any malfunctions to the owner / agent in writing. Failure to maintain the smoke detector is also grounds for termination of tenancy. Additionally, if liability or damages occur because of a Residents' failure to maintain the unit, you may leave yourself open to potential lawsuits and liability (see WAC 212-10-050).

X 
Carolynn L. Comstock

## 2.5 CARBON MONOXIDE DETECTION DEVICES:

Number of detection devices provided in Premises as required by law (several may be required): 1
The above described carbon monoxide detection device(s) are – (check all that apply):

- ☐ Hard-wired
- ☐ Battery operated
- ☑ Plug-in with backup-battery.

In accordance with RCW 19.27.530 a minimum of one carbon monoxide detector is provided. The number of required devices is established by law, and in a given property, several may be necessary. Resident shall not tamper with, remove batteries, or otherwise disable or relocate any carbon monoxide detection devices. Resident's initials at the end of this paragraph indicate that all carbon monoxide detection devices in the Premises are in proper working order as of the date of this Agreement.

**X It is the responsibility of the Resident to maintain all carbon monoxide detection devices, including replacement of any batteries.**
☐ It is not the responsibility of the Resident to maintain all carbon monoxide detection devices, including replacement of any batteries.

If battery operated, the unit(s) has been checked and is properly operating at the commencement of tenancy. It is the resident(s) responsibility to maintain the carbon monoxide detection device(s) in proper operating condition in accordance with the manufacturer's recommendations, including providing any needed replacement batteries. Failure to maintain the carbon monoxide detector is also grounds for termination of tenancy. Additionally, if liability or damages occur because of a Residents' failure to maintain the unit, you may leave yourself open to potential lawsuits and liability (see WAC 212-10-050). Resident also agrees to test the carbon monoxide detector for proper operation once a month and report any malfunctions to the Owner / Agent in writing.

X *CC*
Carolynn L. Comstock

4

## 2 6  USE/ASSIGNMENTS OR SUBLETTING

Resident shall not use the Premises for any business purpose regardless of whether such business may be authorized by local law as a legal home occupation, including, but not limited to, garage/yard sales and private lessons / tutoring, or short term rentals including but not limited to, Airbnb and VRBO. Resident shall comply fully with all municipal, county, and state codes, statutes, ordinances and regulations pertaining to the use district in which the Premises are located. Except as permitted by SMC 7.24.030 Resident shall not assign this Agreement, sub-let the Premises, give accommodations to any roomers or lodgers, or permit the Premises to be used for any purpose other than as the primary full time residence for the following named persons (include all minors):

Carolynn L. Comstock

Except as permitted by SMC 7.24.030 changes in occupancy are not permitted without the prior written approval of Owner at the Owner's sole discretion. Resident(s) unilateral change in marital status or member of their living group does not modify or amend this agreement unless Owner has approved the change in writing through a mutually executed written amendment to this Agreement. Should Owner agree to any sublet, assignment or change in occupancy, the vacating Resident recognizes that any prepayments or refundable deposits will be assigned to the successor Residents and any refund shall be made solely to the successor Residents at the termination of tenancy.

## 2.7  UTILITY CHARGES

(check applicable blanks): Resident agrees to establish use, maintain and/or pay for all utilities without delinquency used in or charged against the Premises during the term of this Agreement. Resident agrees to submit to Owner upon demand, proof that any utilities, assessments or charges have been paid by Resident.

**A.** Paid for by Resident to utility:

☑ electricity  ☑ water ☑ sewer  ☑ garbage/recycling  ☑ natural gas/oil ☐ other: ___
*(Seattle Public Utilities does not permit Residents to open accounts for service in their name)*
**B.** Paid for by Resident to Owner:

☐ electricity  ☐ garbage  ☐ sewer  ☐ water  ☐ natural gas/oil  ☐ other:_____

If resident is paying owner directly, resident must pay amounts charged for utilities within 14 days after Resident receives the bill. If the resident is paying a third party, they must pay before account becomes delinquent. When the utility bill is billed to Owner and copied to Resident, Resident will be charged a $0 service charge for processing. To understand how late payments and returned checks will be handled see Section 2 of this agreement. Non-payment of utility charges may lead to eviction proceeding. Owner is entitled to use resident's security deposit to recover unpaid utility charges upon move-out. Owner/Agent is not liable for failure to provide service or any losses or damages as a result of utility outages, interruptions, fluctuations, Resident's lack of payment or otherwise.

## 2.8  DELIVERY OF PREMISES

If for any reason whatsoever Owner does not deliver possession of the Premises on the commencement of the term of this Agreement, rent shall be prorated until such time as Owner tenders possession. In all other respects this Agreement shall remain in full force and effect and the term shall not be extended. In no event shall Owner be liable to Resident for damages caused by failure to deliver possession of the Premises. If possession of the Premises is not tendered within 5 days of the commencement of the term of this Agreement, Resident may terminate this Agreement by giving written notice to Owner, and any monies paid by Resident to Owner shall be refunded to Resident.

## 2.9  PETS AND ANIMALS

Pet/Animal Information:

☐  Allowed;

☑  Not Allowed; Resident(s) nor visitors or guests are allowed to maintain pets and animals.
If permission for pets is given, no pet noise shall be allowed to escape from the property or to disturb neighbors. It is Resident's responsibility to clean-up and dispose of any pet waste anywhere on the Premises and on adjacent sidewalks, streets, alleys, and neighboring properties. If pets are maintained on the Premises, whether or not authorized by this Agreement, except for charges covered by a prepaid non-refundable cleaning fee, Resident assumes all costs of restoring Premises as a result of any pet or animal on the Premises including but not limited to costs to de-flea, fumigate, clean or replace floor coverings, yard restoration, and cost to analyze floors for presence of animal urine/waste or pest infestation should analysis disclose the presence of such damage. These policies include "guest pets." No pets are to be added or substituted without Owner's / Agent's written permission.

## 2.10  ATTORNEYS FEES / VENUE AND JURISDICTION

As provided by law and except as otherwise prohibited, the prevailing party shall be

entitled to recover its reasonable attorneys fees and court costs incurred in the event any action, suit or proceeding commenced to enforce the terms of this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the State of Washington. It is agreed that venue for any legal action brought to enforce the terms of this Agreement shall be in the District or Superior Court with jurisdiction over the area in which the Premises are located.

## 2.11 NON-WAIVER OF BREACH AND SEVERABILITY

The failure of Owner to insist upon the strict performance of any term of this Agreement, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver or relinquishment of any of such term or Agreement, but the same shall remain in full force and effect if any clause or provision of this Agreement is illegal, invalid, or unenforceable under present or future laws effective during the term hereof, then it is the intention of the parties hereto that the remainder of the Agreement shall not be effected thereby, and it is also the intention of the parties to this Agreement that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

## 2.12 WATER-HEATER

Pursuant to RCW 19.27A.060, the State of Washington requires that upon occupancy, the Temperature control in a domestic hot-water heater within a rental dwelling be set not higher than a 120 degrees Fahrenheit. Resident acknowledges that

☐ the water heater is inaccessible.
☒ Resident has inspected the accessible hot-water heater and to the best of Resident's knowledge does not believe it to be set higher than 120 degrees Fahrenheit.

X 
Carolynn L. Comstock

## 2.13 LEAD WARNING STATEMENT

Housing built before 1978 may contain lead-based paint. Lead-based paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlords and Owners must disclose the presence of known lead-based paint and / or lead-based paint hazards in the dwelling Residents must also receive a federally approved pamphlet on lead poisoning prevention.

## 2.14 RENTAL PREMISES, STORAGE AND PARKING

Resident recognizes that his/her storage of any personal property or vehicles on the Premises is at his/her own risk. Resident acknowledges that all locks or security systems may potentially be breached and that no warranty or representation is made regarding the efficacy of such systems. Resident hereby recognizes that Owner and agent are not liable for claims for damages arising out of the loss or damage to goods in storage for whatever reason outside of Owner's control.

## 2.15 ACTIONS BY THIRD PARTIES/PERSONAL PROTECTION

Owner disclaims any warranties or representation that it will be liable to Resident, resident's family, agents, invitees, employees, or servants for any damages or losses to person or property caused by residents of the property or other persons. Resident understands that Owner and its legal representatives do not guarantee, warrant, or assure resident's personal security and are limited in their ability to provide protection. Resident acknowledges that security devices or measures may fail or be thwarted by criminals or by electrical or mechanical malfunction. Therefore, Resident acknowledges that they should not rely upon the presence of such devices or measures and should protect themselves and their property as if these devices or measures did not exist. **Resident understands that any proactive steps owner has taken are neither a guarantee nor a warranty that there will be no criminal acts or that resident will be free from the violent tendencies of third persons. Resident has been informed and understands and agrees that personal safety and security are resident's own personal responsibility.** Harassment or intimidation of a resident, guest, owner or owner's agent is prohibited. Resident is responsible for all damage caused to the Premises as a result of the negligence of resident, its guests and invitees, including but not limited to fire and glass breakage, and shall be responsible for repair and replacement of any damage caused thereby, regardless of whether the breakage or damage was caused voluntarily, involuntarily, or from vandalism.

## 2.16 ATTRACTIVE NUISANCES

Residents agree to not use, install, allow or support any attractive features including but not limited to trampolines, skate ramps, pools, on the property or surrounding property areas due to potential injury. Any features or such other items in Resident's possession shall be stored in a safe condition in such a way that they cannot be used.

## 2.17 RENTERS INSURANCE

Resident is responsible for all damage caused to the Premises as a result of the negligence of resident, its guests and invitees, including but not limited to fire and glass breakage, and shall be responsible for repair and replacement of any damage caused thereby, regardless of whether the breakage or damage was caused voluntarily, involuntarily, or from vandalism. Resident acknowledges that property or liability insurance maintained by Owner is for Owner's protection and is not intended to protect Resident against personal injury, loss or damage to Resident's personal property or belongings, or cover Resident from their own liability from injury, loss or damage from fire or other negligent acts that Resident or their guests may cause others. Resident acknowledges that they are not considered a co-insured of the Owner and not protected under Owner's fire and liability insurance and understand that any insurance that Owner maintains is not for the benefit of the Resident.

**X Renters liability insurance is required.** Resident agrees to obtain insurance protecting the Premises from loss or damage caused by Resident / Guest or Resident's / Guest's negligence and understands that any insurance that Owner maintains is not for the benefit of Resident. A minimum of $100,000.00 dollars of liability coverage needs to be obtained. Resident is required to provide proof of current renters insurance policy within 30 days of occupancy, and again at lease renewal.

☐ **Renters liability insurance is not required.** However, it is recommended that Resident obtain renter's insurance to protect Resident's personal property and to cover Resident's liability for Resident's or its guest's negligence.

## 2.18 LIENS AND SALES:

Owner may mortgage the Premises or Property or grant deeds of trust with respect thereto. Resident agrees to execute such reasonable estoppels certificates as may be required by a mortgage or deed of trust beneficiary stating that the Lease is in full force and effect and certifying the dates to which Rent and other charges have been paid. This Lease is subject and subordinate to any mortgage or deed of trust which is now a lien upon the Property or the Premises, as well as to any mortgages or deeds of trust that may hereafter be placed upon the Property or Premises and to any or all advances to be made or amounts owing thereunder, and all renewals, replacements, consolidations and extensions thereof. Resident shall execute and deliver, within 10 days after demand therefore, whatever instruments may be required from time to time by any mortgagee or deed of trust beneficiary for any of the foregoing purposes.

## 2.19 GENERAL TERMS

No oral agreements have been entered into with respect to this Agreement. This Agreement shall not be modified except by an instrument in writing signed by Resident and Owner. In the event of more than one resident, each resident is jointly and severally liable for each provision of this Agreement. Each resident states that he or she is of legal age to enter into this Agreement. All obligations hereunder are to be performed in the County and state where the Property is located. Time is of the essence of this Agreement. Neither this Agreement nor any memorandum thereof may be recorded without the express written consent of Owner.

By initialing below, you acknowledge and agree to the terms in Section 2.

X 
Carolynn L. Comstock

# 3. Resident Obligations

## 3.1 RESIDENT OBLIGATIONS: RESIDENT AGREES AS FOLLOWS:

**A. General**
1) To pay all rent and other charges, including utilities and installment payments of        last month's rent, and security deposit, promptly when due or assessed, for which Resident is responsible and to provide proof of payment.

2) To execute all revised rental agreements upon request upon 30 days notice before a new rental period; except for rent increases which require 60 days' notice.

3) To notify and deliver to Owner any legal notice received from any person or governmental agency which relates to the Premises. Fines assessed to Owner by any governmental agency resulting from a Resident's negligent behavior, including but not limited to, a failure to observe burn bans, Resident's maintenance of a nuisance shall be the responsibility of the Resident to pay.

4) Provide the Owner with emergency contact information within (10) days of commencement of tenancy and to provide updated or new information whenever such information is available.
5) Not to do or keep anything in or about the Premises which will increase the present insurance rate thereon. Resident agrees to reimburse Owner for any increase that might occur for violation of this rule.

6) Resident agrees to provide written notice to Owner regarding any habitability issues and to give Owner the opportunity to cure the defective condition prior to exercising any other option granted to the Resident under law. Owner is under no obligation to correct or repair any defective conditions caused by the Resident.

## B. Conduct, Threatening and Harassing Behavior

1) Resident is responsible for their own proper conduct and that of all guests, including the responsibility for understanding and observing all policies and rules.

2) Resident shall reimburse Owner promptly in the amount of the loss, property damage, or cost of repairs or service (including plumbing trouble) caused by negligence or improper use by Resident, their invitees, family or guests. Resident shall be responsible for any damage resulting from window or doors being left open. Such reimbursement shall be due immediate upon demand by Owner. Owner's failure or delay in demanding damage reimbursement, late payment charges, returned check charges or other sums due from Resident is not a waiver thereof; and Owner may demand the same at any time.

3) Not to permit any person to occupy the Premises other than those persons identified in Section 2.6. Guests of Resident staying a maximum of 14 days are permitted within any given 52week period and do not require authorization by Owner. All unauthorized occupants shall, in addition to any other remedy, result in imposition of a per day charge of $25.00.

4) Keys for Premises should not be copied nor given to anyone other than those listed as t lease or occupant without the owner's prior written consent.

5) To comply with all laws and ordinances and the directions of all proper officers in relation thereto; to refrain from use of the Premises or Property for prostitution, drug manufacture/use/possession/sale, any felony or misdemeanor or any other illegal use. Resident shall keep the Premises free of illegal drugs, nor use the same on the Premises. Residents agree not to abuse any drugs, whether legal or illegal, or alcohol in a manner that will either disturb the peace of quiet enjoyment of other residents or endanger the health, safety, or well-being of any resident, family member, guest or invitee resident at the Property or adjacent properties. Resident, family members or guests shall not engage in gang related activity on or about the Premises.

6) Except in cases of emergency where no notice is required, to permit Owner, his or her agents, employees, or representatives to enter the Premises at reasonable times after notice is provided in the Residential Owner- Resident Act and to permit Owner to show the Premises to prospective Residents.

7) Resident shall not keep or maintain a nuisance on the Property.

8) Resident shall not make or allow any disturbing noises which will interfere with the rights, comforts or convenience of others. TV, stereo, radio and musical instrument volumes are to be played at a volume which will not disturb others.

9) Resident's dirt, destruction, damage of any nature, neglect or disrepair to carpet does not constitute normal wear and tear . Carpets must be shampooed by Resident upon vacancy. If carpets are new or Owner had carpets professionally shampooed prior to Resident's occupancy as indicated on the Property Condition Checklist form, Resident shall also pay for professional shampooing of the same. Resident shall obtain area rugs or other coverings to protect hardwood floors.

10) Resident is to follow all bans/laws, including, but not limited to, burn bans.

11) No smoking of any substance is allowed in or on the property unless the owner/agent provides an alternate smoking policy addendum as an attachment to this agreement.

## C. Maintenance, Repairs and Alterations

1) To take all reasonable precautions to prevent the presence of bed bugs.

2) Resident understands and agrees that any damage caused by or related to smoking of any substance, or of any tobacco product use, or use of candles, incense, oil lamps, or burning of any other product (except for proper use of Owner installed fireplaces), shall not constitute wear resulting from ordinary use of the Premises. The cost of such repair, which shall be borne by Resident, may include the following: deodorizing the Premises, cleaning of drapes and blinds, sealing and painting of walls and ceiling, and cleaning, repairing or replacing carpeting or padding.

3) Residents shall be responsible for any damage resulting from windows or doors left open or unlocked.

4) To take all reasonable precautions to prevent the presence of mold or mildew in the Premises, as per attached Mold Handout, such steps to include, generally, using exhaust fans where available in humid locations, removing condensation from windows and other surfaces, providing adequate ventilation to the Premises at all times, storing possessions and furniture so as to provide for air circulation, etc. Resident agrees to promptly notify Owner of the presence of mold or mildew.

5) To protect against freezing of water and waste pipes and stoppage of same in and about the Premises. To maintain the temperature of the Premises at such a level to prevent breakage of pipes or other damage to the Premises. Resident shall relieve stoppage of drains and repair all damage caused thereby, whether through freezing or other obstruction, unless resulting from a condition existing at the commencement of this tenancy.

6) Not to intentionally or negligently destroy, deface, damage, change, repair or remove any part of the structure or dwelling, including the facilities, equipment, furniture, floor or window coverings, furnishings, locks and appliances, or permit any member of Resident's family, invitee, licensee, or any person under Resident's control to do so. Resident and guests shall properly use and operate all such equipment. To replace in a neat and agrees to notify Owner of any such damage that occurs; To repair at Resident's expense any damage to the Premises or equipment caused by Resident's acts or neglect within the time period provided by written notice from Owner requiring such repairs.

7) Not to make any alterations, additions, painting or improvements to the Premises, nor to change or add additional locks, nor change or add telephone, network or cable T.V. jacks, nor to install any wires, cables or aerials for radio or television purposes on the roof or other parts of the building without the prior written approval of Owner. In the event such consent is given, all such alterations or additions shall be made at the sole expense of Resident and shall become the property of Owner and remain in and be surrendered with the Premises upon vacancy, unless the consent given requires the removal of the improvement and restoration of the Premises. Resident is responsible for any damage caused by the use of tacks, nails, or adhesives on walls or woodwork.

8) Prior to the installation of a satellite dish, the Resident must first give notice to the landlord informing them that a satellite is to be installed. Installation must be performed by a licensed professional and within the approved guidelines for installation as provided by the landlord. All satellite equipment and cabling must be contained within space under the Resident's direct control per the lease agreement, not within

or accessible from common areas.

9) Resident shall not disconnect or relocate within the dwelling any owner supplied appliance without owner's written consent.

10) In the event that the Resident requests testing and / or service calls which prove to be unsubstantiated, or the condition is caused by the Resident, the Resident must pay for all actual service call charges.

11) To inspect and maintain in compliance with the information tag thereon all Owner in-unit supplied fire extinguishers. Any fire extinguishers supplied are without charge for convenience of Resident only and no warranty is made as to their sufficiency for the Premises.

### D. Cleanliness and Trash

1) The premises must be kept clean, sanitary and free from objectionable odors. To          properly dispose of all rubbish, garbage, and other waste at reasonable and regular          intervals and to follow all recycling procedures. To assume all costs of extermination and fumigation for infestation caused by Resident.

2) Resident agrees not to store any hazardous material including but not limited to          unreasonable amounts of flammable materials, asbestos, petroleum and petroleum          by-products, old batteries, or paint on the Premises or Property.

3) To provide and maintain receptacles for garbage and trash, and no contract for          collection of the same. The Premises must be kept clean, sanitary and free from          objectionable odor. To properly dispose of all rubbish, garbage, and other waste at          reasonable and regular intervals and to follow all recycling procedures. Resident          is responsible for all costs of extermination and fumigation for infestation caused          by Resident.

4) To maintain the plantings and lawn and to keep the grass, lawn, flowers, planting          beds, trees and shrubs in good condition and repair by watering, fertilizing and          otherwise maintaining those elements in good health and in an appearance          consistent with the character of the surrounding neighborhood and in consideration          of landscaping condition as noted in the property condition report. Owner reserves          the right to have professional gardeners maintain the yard at Resident's expense          should Resident fail to comply with the preceding sentence. To keep the sidewalks          or paths surrounding the Premises free and clear of all obstructions, snow and ice.

### E. Other

1) To permit Owner to display "for rent" or "for sale" signs at any time during a          tenancy.

2) Except as otherwise permitted by law, to display no signs or placards on or about          the Premises or Property that are visible to the public.

3) Owner is not obligated to provide window or door screens. If any are presently          installed, Owner has no obligation to maintain or replace them.

4) Not to install a waterbed or aquarium without the prior written approval of Owner.          If permission is granted to use a waterbed, Resident shall obtain an insurance policy          to protect Owner from any damage which may be caused thereby. No aquariums or          other unusually heavy objects are permitted on the Premises without Owner's          written consent.

5) Resident shall maintain liability insurance and licenses upon all motor vehicles          brought onto the Property and shall provide the Owner proof upon request.

6) To comply with any trespass admonishments issued by Owner. To ensure the          safety of all residents and their authorized guests, Owner expressly reserves the          right to exclude persons who are not authorized residents (as set forth in paragraph          12) from the Premises. A Resident (or guest of a Resident) who knowingly invites or          allows a previously admonished person onto the Premises without the written          authorization of the Owner or Owner's agent shall be deemed to have materially          violated the terms of this agreement. In addition to any other lawful basis, Owner          may issue a trespass admonishment to exclude from the Premises or Property any          person, whether a Resident, occupant, invitee or other third party, who refuses to          promptly show photo identification upon request by Owner or an authorized          representative of Owner, or who refuses to identify him or herself as a resident,          occupant, or guest of a specific resident. Resident shall be personally liable for the          acts of any guests who Resident invites onto the Premises or Property.

7) If the Premises should fail an inspection by local jurisdiction due to the          Resident, the cost of reinspection shall be the responsibility of the Resident.

## 3.2 DAMAGE OR DESTRUCTION OF PREMISES/PROPERTY

In the event of damage to the Premises by fire, water or other hazard, and the damages are such that Resident's occupancy can be continued, Owner shall make such repairs as needed with reasonable promptness and rent shall NOT abate during the period of such repairs. If in Owner's opinion, the Premises or Property are so damaged as to be unfit for occupancy, and Owner elects to make such repairs, the rent provided for herein shall abate during the period of time the Premises are not occupied by Resident, but in all other respects the terms and provisions hereof shall continue in full force and effect. Should repair necessitate Resident vacates the Premises for a period of time, Resident is obligated to vacate as instructed by Owner and rent shall abate during this period. Under no circumstances, terms or condition shall rent abate if damages are caused by the Resident. In the event that the Premises are so damaged or destroyed as to be, in the sole opinion of Owner, incapable of being satisfactorily repaired, then this Agreement shall terminate as of the date of the damage or destruction and Resident shall immediately vacate. In such case, Resident shall pay rent pro-rata through the day Resident vacates the Premises.

## 3 3  SUMMARY OF FUNDS RECEIVED AND DUE

| Item | Charge | Payment Received | Balance |
|------|--------|------------------|---------|
| First Month's Rent | $2950.00 | $2950.00 | $0 |
| Last Month's Rent (if applicable) | $2950.00 | $0 | $2950.00 |
| Non-Refundable Fee | $ | $ | $ |
| Refundable Security Deposit | $2800.00 | $0 | $2800.00 |
| Pet Damage Deposit(limited to 25% of first full month's rent per pet) | $ | $ | $ |
| Other Payments-describe: Application fee | $55.00 | $ | $55.00 |
| Total | $8755.00 | $3005.00 | $5750.00 |

## 3.4  ADDITIONAL CLAUSES

**Other:**

1) BBQs of any kind shall not be placed within 5ft of any exterior building.

## 3.5  OPTIONAL ADDEND AND ATTACHMENTS

☐ Deposit Payment Plan Addendum
☑ Lead Based Paint Pamphlet (Required for pre-1978 Properties)
☑ Lead Based Paint Disclosure Addendum (Required for pre-1978 Properties)
☑ Mold Handout
☑ Property Condition Report (Required whenever a refundable deposit is collected)
☑ Rental Registration & Inspection Ordinance (RRIO) – Copy of Property Registration
☐ Residential Parking Agreement / Addendum (Required for condos and properties with 2+ units)
☑ Seattle Renter's Handbook (updated March 2021)

☑ Crime Free Lease Addendum
☐ Pet Addendum
☐ Rules and Regulations
☑ Smoke Free Addendum
☐ Utility Sub-metering Agreement
   ☐ If leased premises is within an HOA, Resident acknowledges receipt of HOA Addendum.
☑ Other:  No candles or firepits addendum is attached

X  _*CC*_
   Carolynn L. Comstock

By initialing below, you acknowledge and agree to the terms in Section 3.

X  _*CC*_
   Carolynn L. Comstock

**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 4. Bed Bug Addendum

## 4.1 AGREEMENT

The Owner / Agent has inspected the unit prior to lease and has no knowledge of current or past bed bug infestation.

It is agreed between Owner / Agent and Resident as follows:
Resident(s) declare that all furnishings and other personal items being brought in to the unit are free from bed bugs:



X _____
   Carolynn L. Comstock

## 4.2 RESIDENT RESPONSIBILITIES

Resident agrees to comply with the following responsibilities pertaining to the prevention and treatment of possible bed bug infestations:

1. Resident shall practice good housekeeping and maintenance habits, including:

   1. Resident shall not use or bring second-hand furnishings, appliances, etc which have not first been inspected for the presence of bed bugs. If rented furnishings are to be used Resident is obligated to ensure the rental company has established procedures to prevent bed bug infestation and performs inspections of their inventory.
   2. Resident shall cover all mattresses and box springs with impermeable covers to prevent bed bug nesting.
   3. Resident shall check for bed bugs within their personal belongings prior to re-entering rental unit when returning from stay outside the unit.

2. Resident shall report any problems or suspicion of problems immediately, including:

   1. Report any suspected bed bug infestations immediately.
   2. Report any maintenance needs immediately to minimize the possibility of harboring bed bugs within cracks, holes or otherwise or allowing bed bugs to travel from unit to unit.

3. Resident shall cooperate and comply with all pest control efforts and requirements, including, but not limited to:
4. Allowing access to pest control company when proper notice is given, as requested by Owner / Agent, and comply with all requests related to pest control company treatments.

   1. Sealing all items prior to them being removed from the unit for cleaning and sterilization or to prevent spread / further infestation.
   2. Removing all bedding, drapes, curtains, and non-fixed rugs.
   3. Checking and/or removing mattresses and box springs.
   4. Removing all items from dressers, nightstands, and closets.
   5. Vacuuming all floor areas, furniture, mattresses and box springs, and inside all storage furnishings.
   6. Wash all machine-washable items and dry items on high heat setting. Any other items necessitating cleaning which cannot be done by Resident must be taken to a professional dry cleaning company for cleaning and decontamination.

5. Resident agrees to reimburse landlord for all treatment costs if it is determined that a bed bug infestation began within Resident's unit.
6. Resident agrees to reimburse Owner / Agent for expenses arising from any action, claim, loss, damage and/or expenses, including attorney's fees, incurred by Owner / Agent as a result of Resident and/or their guests failure to comply with the terms of this Addendum and Lease / Rental Agreement.
7. Resident agrees that a failure to comply with the terms of this Addendum shall constitute a material breach of the Lease / Rental Agreement and may subject the Resident to court action, including unlawful detainer/eviction proceedings.

## 4.3 ACKNOWLEDGMENT

I / We agree to the addition of the provisions identified herein to our WA State Lease / Rental Agreement & Security Deposit Receipt.

By signing below, you acknowledge and agree to the terms in Section 4.

X _Carolynn_ **Comstock**
Lessee

IP Address: 45.115.205.64
02/08/2023 03:25pm PST

Maple Leaf Real Estate LLC



PO Box 75086 • Seattle, WA 98175
(206) 250-7367

# 5. Crime Free Addendum

### 5.1 TERMS

It is agreed between Owner / Agent and Resident(s) as follows:

**1. ILLEGAL DRUGS:** Resident hereby agrees to keep the premises free of illegal drugs during the term of the Resident's tenancy. Resident agrees that illegal drugs will not be used, stored, manufactured, or kept on the Premises by the Resident, any family member residing on the Premises, or any guest, or invitee during the term of the Agreement. Resident will keep the Premises "drug free" at all times.

**2. SUBSTANCE ABUSE:** Resident agrees that Resident, any family member residing on the Premises and any guest or invitee shall not use controlled substances (including alcohol and prescription medications) in a manner that will either:
a) disturb the peace and quiet enjoyment of the other Residents or neighbors to the Premises; or
b) endanger the health, safety, or well-being of Resident, any family member residing on the Premises, or any guest or invitee.

**3. ILLEGAL GANG ACTIVITY:** Resident agrees that Resident, any family member residing on the Premises, or any guest or invitee shall not be a member of an illegal gang, nor shall Resident, any family member, or any guest or invitee engage in any gang-related activity on the Premises during tenancy. For the purposes of this Addendum, the term "illegal gang" refers to a group, or member of a group, of people involved in organizing illegal activity or anti-social behaviors.

**4. GRAFFITI:** Resident agrees that Resident, any family member residing on the Premises, or any guest or invitee shall not deface any property on property grounds.

**5. CRIMINAL ACTIVITY:** Resident, any family member residing on the Premises, or any guest or invitee shall not engage in criminal activity, including prostitution, threats, intimidation, possession of dangerous weapons, unlawful discharge of firearms, or any breach of the lease agreement that jeopardizes the health, safety and welfare of the Owner / Agent or other Resident or involving imminent or actual property damage.

**6. DOMESTIC VIOLENCE:** Resident agrees that any incident meeting the definition of domestic violence causing physical harm will result in Termination of Tenancy of the perpetrator according to RCW 59.18.575 of the Residential Landlord-Tenant Act of Washington State (59.18).

### 5.2 ACKNOWLEDGMENT

Resident agrees that violation of any of the above terms constitutes a nuisance and is grounds for eviction and/or other legal action by the Owner / Agent.

I / We agree to the addition of the provisions identified herein to our WA State Lease / Rental Agreement & Security Deposit Receipt.

By signing below, you acknowledge and agree to the terms in Section 5.

X *Carolynn Comstock*
_____
Lessee                          IP Address: 45.115.205.64
                                02/08/2023 03:25pm PST



**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367

# 6. Lead Based Paint Disclosure Addendum

## 6.1 LEAD WARNING STATEMENT

Housing built before 1978 may contain lead-based paint. Lead based paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre- 1978 housing, owners/agents must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention.

## 6.2 OWNER'S DISCLOSURE

(A) The presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
(i)  ☐ Known lead-based paint and-or lead based paint hazards are present in the housing as follows:

(ii)  ☑ Owner has no knowledge of lead based paint and/or lead based paint hazards in the housing.

(B) Records and reports available to the owner/agent are (check (i) or (ii) below):
(i)  ☐ Owner has provided the Tenant with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing as follows:

(ii)  ☑ Owner has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

## 6.3 TENANT'S ACKNOWLEDGEMENT

(i)  ☐ Tenant has received copies of all information listed above.
(ii)  ☑ Tenant has received the pamphlet Protect Your Family from Lead in Your Home.

X 
   Carolynn L. Comstock

## 6.4 AGENT'S ACKNOWLEDGMENT

Agent has informed the owner/agent of the owner's/agent's obligations under 42 U.S.C.
4852d and is aware of his/her responsibility to ensure compliance.

## 6.5 CERTIFICATE OF ACCURACY

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided is true and accurate.

By signing below, you acknowledge and agree to the terms in Section 6.

X *Carolynn Comstock*
  Lessee               IP Address: 45.115.205.64
                           02/08/2023 03:25pm PST

**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 7. Mold Addendum

## 7.1 TERMS

To minimize the occurrence and growth of mold in the Leased Premises, Resident hereby agrees to the following:

**1. Moisture Accumulation**
Resident shall remove any visible moisture accumulation in or on the Leased Premises, including on walls, windows, floors, ceilings, and bathroom fixtures; mop up spills and thoroughly dry affected area as soon as possible after occurrence; use exhaust fans in kitchen and bathroom when necessary; and keep climate and moisture in the Leased Premises at reasonable levels.
**2. Apartment Cleanliness**
Resident shall clean and dust the Leased Premises regularly, and shall keep the Leased Premises, particularly kitchen and bath, clean.
**3. Notification Of Management**
Resident shall promptly notify management in writing of the presence of the following:
• A water leak, excessive moisture, or standing water inside the Leased Premises;
• A water leak, excessive moisture, or standing water in any community common area;
• Mold growth in or on the Leased Premises that persists after resident has tried several times to remove it with household cleaning solution, such as Lysol or Pine-Sol disinfectants, Tilex Mildew Remover, or Clorox, or a combination of water and bleach;
• A malfunction in any part of the heating, air conditioning, or ventilation system in the Leased Premises.
**4. Liability**
Resident shall be liable to Owner for damages sustained to the Leased Premises or to Resident's person or property as a result of Resident's failure to comply with the terms of this Addendum.
**5. Violation Of Addendum**
Violation of the Addendum shall be deemed a material violation under the terms of the Lease, and Owner shall be entitled to exercise all rights and remedies it possesses against Resident at law or in equity.

## 7.2 ACKNOWLEDGMENT

In case of a conflict between the provisions of this Addendum and any other provisions of the Lease, the provisions of the Addendum shall govern. This MOLD ADDENDUM is incorporated into the lease executed or renewed on the date below written.

I / We agree to the addition of the provisions identified herein to our WA State Lease / Rental Agreement & Security Deposit Receipt.

By signing below, you acknowledge and agree to the terms in Section 7.

X *Carolynn Comstock*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Lessee                          IP Address: 45.115.205.64
                                02/08/2023 03:26pm PST

**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 8. Mold Handout

## 8.1  WHAT ARE MOLDS?

With more than 100,000 species in the world, it is no wonder molds can be found everywhere. Neither animal or plant, molds are microscopic organisms that produce enzymes to digest organic matter and spores to reproduce. These organisms are part of the fungi kingdom, a realm shared with mushrooms, yeast, and mildews. In nature, mold plays a key role in the decomposition of leaves, wood, and other plant debris. Without mold, we would find ourselves wading neckdeep in dead plant matter. And we wouldn't have great foods and medicines, such as cheese and penicillin. However,
problems arise when mold starts digesting organic materials we don't want them to, like our homes.

## 8.2  HOW DO MOLDS GROW IN MY HOME?

Once mold spores settle in your home, they need moisture to begin growing and digesting whatever they are growing on. There are molds that can grow on wood, ceiling tiles, wallpaper, paints, carpet, sheet rock, and insulation. When excess moisture or water builds up in your home from say, a leaky roof, high humidity, or flooding, conditions are often ideal for molds. Longstanding moisture or high humidity conditions and mold growth go together. Realistically, there is no way to rid all mold and mold spores from your home; the way to control mold growth is to control moisture.

## 8.3  HOW CAN I BE EXPOSED TO MOLD?

When molds are disturbed, their spores may be released into the air. You then can be exposed to the spores through the air you breath. Also, if you directly handle moldy materials, you can be exposed to mold and mold spores through contact with your skin. Eating moldy foods or hand-to-mouth contact after handling moldy materials is yet another way you may be exposed.

## 8.4  HOW CAN MOLDS AFFECT MY HEALTH?

Generally, the majority of common molds are not a concern to someone who is healthy. However if you have allergies or asthma, you may be sensitive to molds. You may experience skin rash, running nose, eye irritation, cough, congestion, and aggravation of asthma. Also if you have an immune suppression or underlying lung disease, you may be at increased risk for infections from molds.

When necessary, some resourceful molds produce toxins in defense against other molds and bacteria called mycotoxins. Depending on exposure level, these mycotoxins may cause toxic effects in people, also. Fatigue, nausea, headaches, and respiratory and eye irritation are some symptoms that may be experienced from exposure to mycotoxins. If you or your family members have health problems that you suspect are caused by exposure to mold, you should consult with your physician.

## 8.5  HOW DO I KNOW IF I HAVE A MOLD PROBLEM?

You may have seen white thread-like growths or clusters of small black specks along your damp bathroom or basement walls, or smelled a "musty" odor. Seeing and smelling mold is a good indication that you have a mold problem. However, you cannot always rely upon your senses to locate molds. Hidden mold can be growing behind wall coverings or ceiling tiles.

Common places to find mold are in areas where water has damaged building materials and furnishings perhaps from flooding or plumbing leaks. Mold can also be found growing along walls where warm moist air condenses on cooler wall surfaces, such as inside cold exterior walls, behind dressers, headboards, and in closets where articles are stored against walls. Rooms with both high water usage and humidity, such as kitchens, bathrooms, laundry rooms, and basements are often havens for mold. If you notice mold or know of water damaged areas in your home, it is time to take action to control its growth.

## 8.6  HOW CAN I CONTROL MOLD GROWTH IN MY HOME?

• **Fix any moisture problems in your home:**
• **Stop all water leaks first. Repair leaking roofs and plumbing fixtures. Move water away from concrete slabs and basement walls.**
• **Increase air circulation within your home, especially along the inside of exterior walls, and ventilate with fresh air from outside. Provide warm air to all areas of the home. Move large objects away from the inside of exterior walls just a few inches to provide good air circulation.**
• **Install and use exhaust fans in bathrooms, kitchens, and laundry rooms.**
• **Ventilate and insulate attic and crawl spaces. Cover earth floors in crawl spaces with heavy plastic.**

- **Clean and dry** water damaged carpets, clothing, bedding, upholstered furniture within 24 to 48 hours, or consider removing and replacing damaged furnishings.
- **Vacuum and clean** your home regularly.

## 8.7 HOW DO I CLEAN UP MOLD?

The time you are most likely to stir up spores and be exposed is the very time you are trying to clean up your mold problem. That's when you need to be the most careful. First, try to determine the extent of the mold infestation. If the area is small and well defined, clean up can be done by you, as long as you are free of any health symptoms or allergies. However, if the mold problem is extensive, such as between the walls or under the floors, you should leave clean up to a professional.

**Large Areas**

1. Consider having a professional cleanup the area. To find a professional, check under "Fire and Water Damage Restoration" in your Yellow Pages. If you decide to clean up on your own, follow the guidance below.
2. Protect yourself by using goggles, gloves, and breathing protection while working in the area. For large consolidated areas of mold growth, you should use an OSHA (Occupational Safety & Health Administration) approved particle mask.
3. Seal off area from the rest of your home. Cover heat registers or ventilation ducts/grills. Open a window before you start to clean up.
4. Remove all your furnishings to a neutral area to be cleaned later. Follow cleaning directions below.
5. Bag all moldy materials you will be discarding.
6. Scrub all affected hard surfaces:
- First with a mild detergent solution, such as laundry detergent and warm water.
- (optional step) Then use a solution of ¼ cup bleach to one quart of water. Wait 20 minutes and repeat. Wait another 20 minutes.
- Last, apply a borate-based detergent solution and do not rinse. This will help prevent mold from growing again. To find a borate-based detergent, read the ingredients listed on the package label for

**Small Areas**

1. Protect yourself by using goggles, gloves, and breathing protection while working in the area. For small isolated areas of mold growth, a cotton dust mask should do.
2. Seal off area from the rest of your home. Cover heat registers or ventilation ducts/grills. Cover all your furniture. Open a window before you start clean up.
3. Bag all moldy materials, you will be discarding.
4. Scrub all affected hard surfaces:
- First with a mild detergent solution, such as laundry detergent and warm water.
- (optional step) Then use a solution of ¼ cup bleach to one quart of water. Wait 20 minutes and repeat. Wait another 20 minutes.
- Last apply a borate-based detergent solution and do not rinse. This will help prevent mold from growing again. To find a borate-based detergent, read the ingredients listed on the package label for borates.
5. Give the entire area a good cleaning, vacuum floors, and wash bedding and clothes if exposed.

Clean all furnishings exposed to mold.

| Permeable and Washable | Such as clothing, bedding, and other washable articles. Simply run through the laundry. |
|---|---|
| Non-permeable and washable | Such as wood, metal, plastic, glass, and ceramics. Mix a solution of lukewarm water and laundry detergent, and wipe down your articles. |
| Permeable but not washable | Such as beds and furniture. If these furnishings are moldy, you should consider discarding and replacing them. If you decide it is a keeper, take the furnishing outside. Give it a good vacuuming, and let it air out. When finished, if you do not notice an odor it should be okay. However, watch for any mold growth or health problems. |

By signing below, you acknowledge and agree to the terms in Section 8.

X *Carolynn Comstock*

Lessee                    IP Address: 45.115.205.64
                          02/08/2023 03:26pm PST

## Maple Leaf Real Estate LLC

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 9. Smoke Free Addendum

### 9.1 TERMS

The rental property at the above address has been designated as a: "Smoke Free Residence" requiring all Residents / Occupants, guests and invitees to refrain from all types of smoking within the above mentioned dwelling.

**X** "Smoke Free Building" requiring all Residents / Occupants, guests and invitees to refrain from all types of smoking within all units balcony/patio and the common areas of subject property.

**X** All types of smoking are prohibited in all public areas of residential properties in accordance with RCW 70.160.075. Smoking in public is allowed only if done in excess of 25 feet from an entrance/exit. Tenant is responsible to clean up all cigarette garbage and not leave cigarette garbage behind.

**X** Smoking and Vaping are prohibited outside the building and property to include patios, balconies, porches, and the entire yard. Recreational marijuana use is legal in Washington. However, both Washington law and Federal law give us the right to prohibit it. Marijuana use, possession, and/or growing is prohibited on the property and violators will be evicted.

### 9.2 ACKNOWLEDGMENT

Resident(s) agree(s) to comply with this addendum and understand(s) that the enforcement upon its guests and invitees will be Resident's responsibility. Non-compliance with the smoke free addendum may result in one or more of the following actions by Owner/Agent:

1. Service of a 10 Day Notice to Comply with Agreement or Vacate
2. Forfeiture of all or part of your security deposit due to any resulting smoke damage/odor
3. Eviction action in enforcement of the lease terms and this addendum.

I / We agree to the addition of the provisions identified herein to our WA State Lease / Rental Agreement & Security Deposit Receipt.

By signing below, you acknowledge and agree to the terms in Section 9.

X *Carolynn Comstock*
_____
Lessee                          IP Address: 45.115.205.64
                                02/08/2023 03:26pm PST

**Maple Leaf Real Estate LLC**

PO Box 75086 • Seattle, WA 98175
(206) 250-7367



# 10. Seattle Utilities

### 10.1 ELECTRIC

Before your move in date, you need to set up your account dated on the first day of your lease.

**Seattle City Light: 206-684-3000**

You can ask to have the reading pro-rated, but if meter reading is required, here are some tips to help you read your meter:
— Most meters have five dials but some have only four. The pointer on each dial moves in the opposite direction from the pointers on the dials next to it, so be careful.
— If the pointer is between two numbers, record the lower of the two numbers.
— If the pointer is directly on a number, look at the dial to the right. If the pointer on that dial has passed "0", record the number the pointer is on.

### 10.2 GAS

Call Puget Sound Energy or go online to fill out the 'New Tenant' form to open your account **dated on the first day of your lease.**

Puget Sound Energy: 888-225-5773 **OR**

Go to www.PSE.com:

1. Accounts and Services
2. Property Managers
3. New Tenant
4. On-line Form
5. Click on options below - Regular Utility Service
6. Fill out on-line form and submit.

### 10.3 WATER/SEWER/GARBAGE

This bill stays in the owners' names and is mailed to Maple Leaf Management. You do not need to do anything. Your first month and last month bills will be pro-rated. We will order a resident copy to be sent to you. Once you start receiving your resident copy directly from Seattle Public Utilities please let our office know so that we will no longer need to mail you a copy of the bill.

By signing below, you acknowledge and agree to the terms in Section 10.

X *Carolynn Comstock*
_____
Lessee                    IP Address: 45.115.205.64
                          02/08/2023 03:26pm PST

EXHIBIT 2

SENT 4/21/25

## LEGAL FEES

| Company | Pay Date | Amount | Relevent lease section |
|---|---|---|---|
| Cutting Law Office/LT services | 9/26/2024 | 690 | 2.1 |
| Cutting Law Office/LT services | 9/26/2024 | 250 | 2.1 |
| Cutting Law Office/LT services | 9/26/2024 | 40 | 2.1 |
| Cutting Law Office/LT services | 1/6/2025 | 265 | 2.1 |
| Cutting Law Office/LT services | 1/30/2025 | 806.98 | 2.1 |
| Cutting Law Office/LT services | 2/21/2025 | 950.49 | 2.1 |

## HOUSEHOLD EXPENSES

| Company | Pay Date | Amount | Relevent lease section |
|---|---|---|---|
| Action Jackson Drain Cleaning & Plumbing | 6/26/2024 | 346.5 | 3.1.B.2 |
| Action Jackson Drain Cleaning & Plumbing | 7/16/2024 | 346.5 | 3.1.B.2. |
| Action Jackson Drain Cleaning & Plumbing | 10/18/2024 | 358.63 | 3.1.B.2. |
| Maple leaf locksmith | 4/3/2025 | 480 | 1.4.C |
| Seattle Rubbish | 4/11/2025 | 2502.21 | 2.1 |
| Seattle Rubbish | 4/4/2025 | 659.37 | 2.1 |
| Seattle Rubbish | 4/11/2025 | 19.78 | 2.1 |
| Scoop Dog | 4/4/2025 | 80 | 2.9 |
| SeaTown Cleaners | 4/9/2025 | 655 | 1.4.B; 7.1.2 |
| Pacific Topsoils | 4/5/2025 | 37.05 | 3.1.D.4 |
| Pacific Topsoils | 4/10/2025 | 24.7 | 3.1.D.4 |
| Seattle Rubbish | 4/8/2025 | 805.46 | 3.1.D.4 |
| Tweedy and Pop | 4/5/2025 | 39.66 | 1.4.C |
| Cressy Door Co Inc | 4/10/2025 | 99.36 | 1.4.C |
| Kathleen DeMaria (# hours @ 75/hr) | 4/3/2025 | 1125 | 1.4.E; 2.1 |
| Julie Postma (# hours @75/hr) | 4/3/2025 | 1125 | 1.4. E; 2.1 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/4/2025 | 787.5 | 1.4.E; 2.1; 3.2 |
| Julie Postma (# hours @75/hr) | 4/4/2025 | 487.5 | 1.4.E; 2.1; 3.2 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/5/2025 | 600 | 1.4.E.; 3.1.D.4 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/7/2025 | 150 | 1.4.E.; 2.2 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/12/2025 | 300 | 1.4.E; 3.1.D.4 |
| Julie Postma (# hours @75/hr) | 4/12/2025 | 300 | 1.4.E., 3.1.D.4 |
| Vitaly flooring | 4/11/2025 | 3381 | 2.9 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/11/2025 | 600 | 1.4.E; 2.9 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/11/2025 | 300 | 1.4.E; 3.1.C.3 |
| Kathleen DeMaria (# hours @ 75/hr) | 4/10/2025 | 600 | 1.4.E; 3.1.D.4 |

| Description | Date | Amount | Code |
| --- | --- | --- | --- |
| Kathleen DeMaria (# hours @ 75/hr) | 4/11/2025 | 750 | 1.4.D; 3.1.C.7; 3.1.c.6 |
| mailbox | 4/11/2025 | 119 | 3.1.C.7 |
| bedroom light | 4/11/2025 | 38 | 1.4.D |
| bathroom fan | 4/11/2025 | 109 | 3.1.C.4, 3.1.C.6 |

### RENT and UTILITIES

| Description | Date | Amount | Code |
| --- | --- | --- | --- |
| 9/24: Rent | 9/1/2024 | 2950 | 1.3 |
| 9/24: Liability to Landlord Insurance | 9/1/2024 | 9.5 | 1.3 |
| 9/24: Late payment charge | 9/6/2024 | 50 | 1.3 |
| 9/24: Daily late payment charge | 9/30/2025 | 300 | 1.3 |
| 10/24: Rent | 10/1/2024 | 2950 | 1.3 |
| 10/24: Liability to Landlord Insurance | 10/1/2024 | 9.5 | 1.3 |
| 10/24: Late payment charge | 10/6/2024 | 50 | 1.3 |
| 10/24: Daily late payment charge | 10/31/2024 | 310 | 1.3 |
| Puget Sound Energy (Gas) (Service 8/31/24-9/11/24) | 9/11/2024 | 14.68 | 2.7 |
| 11/24: Rent | 11/1/2024 | 2950 | 1.3 |
| 11/24: Liability to Landlord Insurance | 11/1/2024 | 9.5 | 1.3 |
| 11/24: Late payment charge | 11/6/2024 | 50 | 1.3 |
| 11/24: Daily late payment charge | 11/31/24 | 300 | 1.3 |
| Seattle City Light (Service dates 8/31/2024-11/4/2024) | 11/4/2024 | 130.86 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 9/11/24-10/11/24) | 10/11/2024 | 39.88 | 2.7 |
| 12/24: Rent | 12/1/2024 | 2950 | 1.3 |
| 12/24: Liability to Landlord Insurance | 12/1/2024 | 9.5 | 1.3 |
| 12/24: Late payment charge | 12/6/2024 | 50 | 1.3 |
| 12/24: Daily late payment charge | 12/31/2024 | 310 | 1.3 |
| Water/sewer/garbage (Charges as of 11/08/24) | 11/8/2024 | 326.57 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 10/11/24-11/11/24) | 11/11/2024 | 72.8 | 2.7 |
| 1/25: Rent | 1/1/2025 | 2950 | 1.3 |
| 1/25: Liability to Landlord Insurance | 1/1/2025 | 9.5 | 1.3 |
| 1/25: Late payment charge | 1/6/2025 | 50 | 1.3 |
| 1/25: Daily late payment charge | 1/31/2025 | 310 | 1.3 |
| Seattle City Light (Service from/service through: 11/4/2024-1/8/2025) | 1/8/2025 | 198.38 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 11/11/24-12/11/24) | 12/11/2024 | 104.18 | 2.7 |
| Water/sewer/garbage (Charges as of 1/10/2025) | 1/10/2025 | 301.51 | 2.7 |
| 2/25: Rent | 2/1/2025 | 2950 | 1.3 |
| 2/25: Liability to Landlord Insurance | 2/1/2025 | 9.5 | 1.3 |
| 2/25: Late payment charge | 2/6/2025 | 50 | 1.3 |

| Description | Date | Amount | |
|---|---|---|---|
| 2/25: Daily late payment charge | 2/28/2025 | 280 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 12/11/24-1/10/25) | 1/10/2025 | 109.74 | 2.7 |
| 3/25: Rent | 3/1/2025 | 2950 | 1.3 |
| 3/25: Liability to Landlord Insurance | 3/1/2025 | 9.5 | 1.3 |
| 3/25: Late payment charge | 3/6/2025 | 50 | 1.3 |
| 3/25: Daily late payment charge | 3/31/2025 | 310 | 1.3 |
| Seattle City Light (service from 1/8/25-3/11/25) | 3/11/2025 | 187.21 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 1/10/25-2/10/25) | 2/10/2025 | 158.01 | 2.7 |
| Water/sewer/garbage (Charges as of 3/12/25) | 3/12/2025 | 232.96 | 2.70 |
| 4/25: Rent | 4/1/2025 | 295 | 1.3 |
| 4/25: Liability to Landlord Insurance | 4/1/2025 | 0.95 | 1.3 |
| Puget Sound Energy (Gas) (Dates of usage 2/10/25-3/12/25) | 3/12/2025 | 136.68 | 2.7 |
| Puget Sound Energy (Gas) (Dates of usage 3/12/25-4/3/25) | 4/3/2025 | 65.39 | 2.7 |
| Seattle City Light (3/12/25-4/3/25) | 4/3/2025 | 49.15 | 2.7 |
| Water/sewer/garbage (estimated Charges as of 4/3/25) | 4/3/2025 | 191.66 | 2.7 |
| Subtotal | | 46030.8 | |
| Security deposit | | 2800 | |
| **TOTAL OWED** | | **43230.8** | |